# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>BRANDON ALLAN MAUL,<br><br>  Defendant. | No. CR08-4072-MWB<br><br>**REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS** |

 This matter is before the court on a motion to suppress evidence filed on October 20, 2008, by the defendant Brandon Allan Maul. Doc. No. 24. The plaintiff (the "Government") filed a resistance on October 27, 2008. Doc. No. 26. Pursuant to the Trial Management Order, pretrial motions were assigned to the undersigned for review and the filing of a recommended disposition. Doc. No. 14. Accordingly, the undersigned held a hearing on Maul's motion on October 28, 2008. Assistant U.S. Attorney Shawn Wehde appeared on behalf of the Government. Maul appeared in person with his attorney, Alexander Esteves.

 The Government offered the testimony of Tri-State Drug Task Force officer Troy Hansen, and Sioux City Police officers Jake Noltze and William Nice, Jr. Two exhibits were admitted into evidence, to-wit: Gov't Ex. 1, a DVD labeled "Ofc Noltze Front-Camera 8-12-08," and Gov't Ex. 2, a DVD labeled "Ofc Nice Car Camera 8-12-08." Both DVDs were made at the time of the traffic stop that gave rise to Maul's motion to suppress.

 On August 26, 2008, the grand jury returned a two-count Indictment charging Maul and a codefendant, Hubert Hawthorne, III, with conspiracy to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), & 846; and possession, and aiding and abetting possession, of 50 grams or more of crack cocaine with intent to distribute, in

violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A), and 18 U.S.C. § 2. Doc. No. 1. The charges against the defendants arose from a traffic stop that occurred on August 12, 2008.

On that date, TFO Hansen was contacted by TFO Brad Downing who, in turn, had been contacted by a confidential informant ("CI"). The CI told Downing he had been approached at an Arby's restaurant in Sioux City, Iowa, by an individual who stated he was selling crack cocaine and wanted the CI to do business with him. The CI provided a description of the individual and the car the individual was driving, and also of a location where the individual or the vehicle might be located. The vehicle was described as a gold or tan Chevrolet Blazer.

TFO Hansen and TFO Downing located a vehicle matching the description given by the CI in a public parking lot in the area described by the CI. The parking lot was across the street from a brick apartment building. Hansen and Downing established surveillance at the apartment building. The officers watched a couple of individuals, later identified as the defendants Maul and Hawthorne, go back and forth between the Blazer and the apartment building. Eventually, the individuals got into the Blazer and began driving south on Pierce Street. The officers planned to follow the Blazer until they observed a traffic violation, stop the vehicle, and have a K-9 unit do a sniff of the vehicle. However, before they could stop the vehicle, the defendants returned to the apartment building, and Maul went back inside.

When Maul returned to the vehicle, the defendants again drove away, and the officers followed them to the MidAmerican Building on Douglas Street. Hansen talked with Officer Noltze, who was in the area, and also with Office Nice, who was in the area with his K-9 unit. Hansen told Noltze the Blazer was leaving the MidAmerican Building, traveling northbound on Douglas. He directed Noltze to attempt to establish probable cause for a traffic stop of the vehicle. He also informed Noltze that the driver of the vehicle was suspected of selling crack cocaine.

Noltze began following the Blazer shortly after it left the MidAmerican Building. The vehicle turned eastbound on 5th Street (which is one-way heading east), and then turned left onto Nebraska (a one-way street heading north). As the driver executed the left turn, he drove over the curb. Because of this, Noltze decided to stop the vehicle. Noltze followed the vehicle to the light at Nebraska and 6th Street. When the light changed and the vehicle proceeded northward, Noltze activated his emergency lights, which also activated his vehicle's external camera. *See* Gov't Ex. 1.

Noltze approached Maul, who was driving the Blazer, and informed him of the reason for the stop. Maul's eyes were red and watery, and Noltze asked Maul if he had been drinking. Maul responded, "No." He asked if there was anything illegal in the vehicle, and again Maul responded, "No." While he was talking with Maul, Noltze detected the odor of marijuana coming from the vehicle. Noltze obtained Maul's driver's license, and the registration and insurance verification on the vehicle. Maul informed Noltze that he did not own the vehicle. Noltze returned to his police car to call dispatch and check Maul's identification.

After Noltze obtained verification of Maul's identity, he returned Maul's driver's license and the other documents to Maul. Noltze noticed Maul was nervous and his hands were shaking, and he could tell from a vein pulsing in Maul's neck that his heart was beating rapidly. He asked Maul again if there was anything illegal in the car, and Maul again responded, "No." He asked Maul for consent to search his vehicle, and Maul responded that he did not know why they would need to look inside the vehicle because there was nothing illegal in it. Noltze walked back and told Nice to execute a K-9 sniff of the vehicle's exterior.

The officers asked Maul and Hawthorne to get out of the car for the K-9 sniff. Nice testified it is standard procedure to remove a vehicle's occupants from the vehicle before conducting an exterior K-9 sniff. Noltze was on the driver's side with Maul, and Nice was

3

on the passenger's side with Hawthorne. As Hawthorne got out of the car, an object Nice immediately recognized as a metal marijuana grinder fell to the ground. Nice asked Hawthorne if he had any illegal substances on his person, and Hawthorne told Nice to look for himself. Nice patted down Hawthorne and located a quantity of marijuana in Hawthorne's left front pocket. The officers placed Hawthorne and Maul under arrest, and conducted a search of the vehicle pursuant to the arrest. During the search, they found a quantity of crack cocaine.

*Discussion*

In his motion to suppress, Maul argues the officers lacked probable cause to perform the traffic stop. He further argues that even if the traffic stop was justified, the traffic stop ended when Noltze returned Maul's driver's license and other documents to him, and the officers unlawfully detained him after that time. Noltze is mistaken on both counts.

The law is well settled that an officer has probable cause for a traffic stop when any traffic violation occurs, even a very minor violation. *See, e.g., United States v. Gregory*, 302 F.3d 805, 809 (8th Cir. 2002) (citations omitted); *United States v. Perez*, 200 F.3d 576, 579 (8th Cir. 2000). This is true even if the stop is pretextual. *See United States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007) (citations omitted). Noltze testified he believed driving over a curb while executing a turn constituted a traffic violation. He stated that at a minimum, driving over the curb represented failure to maintain control of the vehicle. For purposes of Maul's motion, it is irrelevant whether or not Noltze was correct that driving over the curb constituted a traffic violation. Even if he was incorrect, the standard is whether Noltze objectively had a reasonable basis for believing a traffic violation had occurred. If so, then probable cause existed for the stop. *Whren v. United States*, 517 U.S. 806, 810, 116 S. Ct. 1769, 1772, 135 L. Ed. 2d 89 (1996); *United States v. Thomas*,

93 F.3d 479, 485 (8th Cir. 1996). The court finds Noltze's belief that Maul had committed a traffic violation was objectively reasonable. Moreover, in this case, the court finds Noltze had probable cause to stop Maul to determine whether he was intoxicated after Noltze observed Maul drive over the curb.

Turning to the issue of whether the officers unlawfully detained Maul after the traffic stop itself was concluded, "a dog sniff may be the product of an unconstitutional seizure if the traffic stop is unreasonably prolonged before the dog is employed." *Lyons*, 486 F.3d at 372 (citing *Illinois v. Caballes*, 543 U.S. 405, 407-08, 125 S. Ct. 834, 837, 160 L. Ed. 2d 842 (2005)). In the present case, less than eleven minutes elapsed from the time Maul was stopped until the officers asked Maul and Hawthorne to step out of the vehicle for the dog sniff. The court finds "[t]he officers acted diligently in pursuit of their investigation, and the [eleven] minute wait was not excessive under the circumstances." *Id.* (citing *United States v. Donnelly*, 475 F.3d 946, 951, 954 (8th Cir. 2007) (fifty-nine minute delay until drug dog arrived); *United States v. White*, 42 F.3d 457, 460 (8th Cir. 1994) (eighty minute delay until drug dog arrived)). *See also United States v. Gregory*, 302 F.3d 805, 810 (8th Cir. 2002) ("The officer did not need to have probable cause or even reasonable suspicion to support [a drug dog sniff] because 'a dog sniff of the exterior of a vehicle is not a search.'") (quoting *Unites States v. Morgan*, 270 F.3d 625, 629 (8th Cir. 2001)).

Once the officers decided to execute a dog sniff of the vehicle, the next issue is whether the officers had the right to ask Maul and Hawthorne to exit the vehicle during the dog sniff. It is well settled that an officer can ask the driver to step out of a vehicle during the course of a traffic stop. *See, e.g., United States v. Jones*, 269 F.3d 919, 924 (8th Cir. 2001) (citations omitted). However, in the present case, Noltze testified that when he returned Maul's driver's license and other documents to him, the traffic stop was over. Noltze never asked Maul or Hawthorne to exit the vehicle prior to that time. Instead, the

officers asked Maul and Hawthorne to exit the vehicle for purposes of the dog sniff that was going to occur after the conclusion of the traffic investigation itself. Under these circumstances, removing Maul and Hawthorne from the vehicle was, in effect, a seizure of them within the meaning of the Fourth Amendment, and their further detention was an investigative one beyond the scope of the original traffic stop. *See id.*, 269 F.3d at 926-27. This further intrusion could only be lawful if it was based on "a reasonable, articulable suspicion that criminal activity [was] afoot[.]" *Id.* (citing *United States v. Bloomfield*, 40 F.3d 910, 918 (8th Cir. 1994)). "This requires that the officer's suspicion be based upon particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant . . . suspicion that a crime [is] being committed." *Id.* (internal quotation marks, citations omitted).

"In evaluating whether a set of facts would give rise to reasonable suspicion, this court must look at the totality of the circumstances and not just each independent fact standing alone." *Id.* (citing *Untied States v. Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 694-95, 66 L. Ed. 2d 621 (1981)). In the present case, the totality of the circumstances gave rise to a reasonable suspicion justifying further investigation. Hansen had relayed to Noltze that he had information indicating Maul was involved in dealing drugs. Noltze observed that Maul was extremely nervous, and his eyes were red and watery. In addition, Noltze smelled the odor of marijuana coming from the car. Considering the totality of the circumstances, the court finds the officers' continued detention of Maul and Hawthorne past the conclusion of the traffic stop investigation was supported by a reasonable, articulable suspicion that criminal activity was afoot. The further intrusion was limited in scope; the officers merely asked Maul and Hawthorne to exit the vehicle during the dog sniff, both to avoid distracting the dog during the sniff and for their own safety. The court

finds the further detention after the traffic stop, and asking Maul and Hawthorne to exit the vehicle, was lawful.[1]

Once Hawthorne dropped the marijuana grinder, and the marijuana was found on his person, his arrest justified a search of the entire passenger compartment of the vehicle. *See United States v. Poggemiller*, 375 F.3d 686 (8th Cir. 2004).[2]

Maul has failed to show any legal basis for suppression of the evidence seized during the traffic stop, and the undersigned RESPECTFULLY RECOMMENDS that his motion to suppress be denied. Objections to this Report and Recommendation must be filed **by November 5, 2008**. Responses to objections must be filed by **November 10, 2008**.

**IMPORTANT NOTE**: Any party planning to lodge any objection to this report and recommendation must order a transcript of the hearing **by October 31, 2008**, **regardless of whether the party believes a transcript is necessary to argue the objection**. If an attorney files an objection to this report and recommendation without

---

[1] Once Noltze smelled the odor of marijuana coming from the vehicle, the officers likely had probable cause to search the vehicle in any event under the "automobile exception" to the warrant requirement. *See, e.g., United States v. Caves*, 890 F.2d 87, 89-90 (8th Cir. 1989) (citing, *inter alia*, *Chambers v. Maroney*, 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970)); *California v. Carney*, 471 U.S. 386, 392, 105 S. Ct. 1066, 2072, 85 L. Ed. 2d 406 (1985).

[2] It was the officers' removal of Hawthorne from the vehicle that ultimately led to his arrest, the incident search of the vehicle, and discovery of the drugs. Because the Government has not raised the issue of whether Maul has standing to challenge the officers' removal of Hawthorne from the vehicle, the court will not address the issue here.

having ordered the transcript as required by this order, the court may impose sanctions on the attorney.

**IT IS SO ORDERED.**

**DATED** this 30th day of October, 2008.

*[signature]*
PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT